OPINION
{¶ 1} Appellant, Sylvia Jaraki, appeals two judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of her three children to appellee, Franklin County Children Services ("FCCS"). For the reasons stated below, we affirm.
 {¶ 2} In September 1998, appellant's children, Aaron Thompson, born in 1994, and Annie Thompson, born in 1996, were adjudicated dependent minors and placed in the temporary custody of FCCS. Another child, Maria Thompson, upon her birth in 1999, was also found to be dependent and placed in the temporary custody of FCCS. The children were placed in foster care, and FCCS formulated a case plan with the goal of reunifying appellant with her children. However, FCCS eventually filed motions for permanent custody pursuant to R.C. 2151.413(D)(1), on the grounds that the children had been in the temporary custody of FCCS for 12 or more months of a consecutive 21-month period.
 {¶ 3} The matter proceeded to trial in October 2000, with the trial court concluding that FCCS had met the statutory requirements of R.C. 2151.414(B)(1)(d), and ordering the children to be placed in the permanent custody of FCCS. However, this court reversed and remanded that decision on the grounds that the trial court had failed to properly swear FCCS's only witness. In re Thompson Children (Apr. 26, 2001), Franklin App. No. 00AP-1358 ("Thompson I").
 {¶ 4} After retrial upon remand, the trial court adopted the decision of the magistrate assigned to the case, ordering the children to be placed in the permanent custody of FCCS. Appellant appealed and we granted a motion to consolidate the two cases. Appellant now assigns the following as error:
 {¶ 5} "I. Trial Court erred in denying Appellant's Motion to Dismiss FCCS's Motion for Permanent Custody on the basis that the motion was not deposed of, and the order journalized, no later that [sic] 200 days after the motion was filed in violation of Ohio Rev. Code §2151.414(A)(2) and further in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article 1, Bill of Rights, Sections One, Two, Three, and Twenty of the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws.
 {¶ 6} "II. Trial Court erred in denying Appellant's Motion to Dismiss FCCS's Motion for Permanent Custody on the basis that the motion was not properly served and therefore the Court lacked jurisdiction to address FCCS's Motion for Permanent Custody in violation of Ohio Statutory Law, Ohio Rev. Code § 2151.414(A), and further in violation of Appellant's fundamental rights pursuant to the First andNinth Amendments of the United States Constitution and the Ohio Constitution, Article I, Sections One, Three, and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Denial of Appellant's fundamental right to notice and the opportunity to be heard; (3) Fundamental unfairness; and (4) Denial of the equal protection of the laws.
 {¶ 7} "III. Trial Court erred prejudicially in overruling Appellant's objection to the presence of Appellee's material witness on the basis that Ohio R. Evid. 615, facially and as applied to Appellant, is unconstitutional and therefore void in that the statutory provision creates discriminant classifications, those who are prejudiced by the presence of a material witness of an adverse party during a trial proceeding and those who are not prejudiced in the absence of the material witness of an adverse party during a trial proceeding, with disproportionate treatment that does not meet the stringent requirements of the Strict Scrutiny test pursuant to Troxel v. Granville (2000),120 S.Ct. 2054 on the basis that the trial proceeding involves an infringement of a substantively protected fundamental right in violation of the First, Ninth, and Fourteenth, both Due Process and Equal Protection clauses, Amendments of the United States Constitution and Sections One, Two, Three, Sixteen, and Twenty of the Ohio Constitution, Article One, Bill of Rights, on the following grounds: (1) Violation of Appellant's freedom of expression and right of association; (2) `Per Se' overbroad; (3) Arbitrary, invidious, discriminatory, and capricious; (4) Fundamental unfairness; and (5) Denial of the equal protection of the laws.
 {¶ 8} "IV. Trial Court erred in denying Appellant's Motion to Declare Ohio Rev. Code § 2151.414(B) [`by clear and convincing evidence'], facially and applied to Appellant, unconstitutional and therefore void under the United States and the Ohio Constitutions in violation of Appellant's fundamental rights pursuant to the First andNinth Amendments of the United States Constitution and the Ohio Constitution, Article I, Sections One, Three, and Twenty of the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws.
 {¶ 9} "V. Trial Court erred in denying Appellant's Motion requesting the Court to declare Ohio Rev. Code § 2151.413 and §2151.414 [in particular, E (1) — (16); E (16) `Any other factor the court considers relevant.'], facially and as applied to Appellant, which set forth Ohio Statutory Standards in ascertaining the termination of parental rights, unconstitutional and therefore void in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty of the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Vagueness, indefinite, and overbroad; (2) Denial of Appellant's fundamental expression of speech and right of association; (3) fundamental unfairness; and (4) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in `a criminal action to deny a defendant liberty or life' and, as such, should be entitled to the same heightened protections consistent with the United States and the Ohio Constitutions.
 {¶ 10} "VI. Trial Court erred in denying Appellant's Motion Requesting the Court to Declare Ohio Rev. Code § 2151.414(B)(I)(d), facially and as applied to Appellant, unconstitutional and therefore void under the United States and the Ohio Constitutions in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article 1, Bill of Rights, Sections One, Three, and Twenty, and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Vagueness, indefinite, and overbroad; (2) Denial of Appellant's fundamental expression of speech and right of association; (3) fundamental unfairness; and (4) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in `a criminal action to deny a defendant liberty or life' and, as such, should be entitled to the same heightened protections consistent with the United States and the Ohio Constitutions.
 {¶ 11} "VII. Trial Court erred in denying Appellant's Motion requesting the Court to declare Ohio Rev. Code § 2151.413 (D)(1) and Ohio Rev. Code § 2151.414(E)(11) [Amended effective March 18, 1999], facially and as applied to Appellant, unconstitutional and therefore void in that that statutory provisions violate Section Ten, Article One, First, Ninth, and Fourteenth, both Due Process and Equal Protection Clauses, Amendments of the United States Constitution and Section Twenty-eight, Article Two, Legislative, Sections One, Two, Three, Sixteen, and Twenty of the Ohio Constitution, Article One, Bill of Rights, on the following grounds: (1) Violation of the ex post facto and retroactive provisions of the United States and the Ohio Constitutions; (2) Violation of Appellant's freedom of expression and right of association; (3) Fundamental unfairness; and (4) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in `a criminal action to deny a defendant liberty or life' and, as such, should be entitled to the same heightened protections consistent with the Unites States and Ohio Constitutions.
 {¶ 12} "VIII. Trial Court erred in denying Appellant's Motion requesting the Court to declare Ohio Rev. Code § 2151.414(E)(11) [Amended effective March 18, 1999], facially and as applied to Appellant, unconstitutional and therefore void in that it mandates Trial Court's consideration of acts, specifically, parental rights termination with respect to a sibling of the child, that maybe totally unrelated and irrelevant to the instant case in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty, and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) `Per se' overbroad; (3) Fundamental unfairness; and (4) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in `a criminal action to deny a defendant liberty or life' and, as such, should be entitled to the same heightened protections consistent with the United States and the Ohio Constitutions.
 {¶ 13} "IX. Trial Court erred in denying Appellant's Motion requesting the Court to declare Ohio Rev. Code § 2151.413 (D)(1) [Amended effective March 18, 1999], facially and as applied to Appellant, unconstitutional and therefore void in that it violates the `Separation of Powers' (`checks and balances') doctrine explicitly and implicitly set forth in the United States and the Ohio Constitutions and further violates Appellant's fundamental rights which are substantively protected under the First, Ninth, and Fourteenth, both Due Process and Equal Protection Clauses, Amendments of the United States Constitution and Sections One, Two, Three, Sixteen, and Twenty of the Ohio Constitution, Article One, Bill of Rights, on the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) `Per se' overbroad; (3) Fundamental unfairness; and (4) Denial of the Equal Protection of the laws.
 {¶ 14} "X. Trial Court erred in denying Appellant's Motion requesting the Court to declare Ohio Rev. Code § 2151.413 and Ohio Rev. Code § 2151.414, facially and as applied to Appellant, unconstitutional and therefore void in that the statutory provisions create discriminant classifications, those who suffer the loss of their children to permanent custody and those who retain their rights under § 2151.413 and § 2151.414 as well as other parents who in custodial proceedings, i.e., Title 31 of the Ohio Rev. Code, maintained their parental rights even in the extreme circumstance of parental unfitness, with disproportionate treatment that do not meet the stringent requirements of the Strict Scrutiny test pursuant to Troxel v. Granville (2000), 120 S.Ct. 2054 in violation of the First, Ninth, and Fourteenth, both Due Process and Equal Protection Clauses, Amendments of the United States Constitution and Sections One, Two, Three, Sixteen, and Twenty of the Ohio Constitution, Article One, Bill of Rights, on the following grounds: (1) Violation of Appellant's freedom of expression and right of association; (2) `Per se' overbroad; (3) Arbitrary, invidious, discriminatory, and capricious; (4) Fundamental unfairness; and (5) Denial of the equal protection of the laws.
 {¶ 15} "XI. Trial Court erred in denying Appellant's Motion setting forth two (2) requests — (a) a trial by an impartial jury and (b) declaring Ohio R. Juv. P. 27(A) and Ohio Rev. Code §2151.35(A), which requires the Juvenile Court to hear and determine all cases of children without a jury, unconstitutional and therefore void in violation of Appellant's fundamental rights pursuant to the First,Seventh, and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article 1, Bill of Rights, Sections One, Three, Five, and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental right to an impartial jury; (2) Denial of Appellant's fundamental expression of speech and right of association; (3) Fundamental unfairness; and (4) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in `a criminal action to deny a defendant liberty or life' and, as such, should be entitled to the same heightened protections consistent with the United States and the Ohio Constitutions.
 {¶ 16} "XII. Trial Court erred in denying Appellant's Motion requesting the Court to Declare Ohio Rev. Code § 2151.414(B) [In particular, `in the best interest of the child'], facially and as applied to Appellant, unconstitutional and therefore void under the United States and the Ohio Constitutions in that the statutory provision is contrary to and inconsistent with the Court's mandate set forth in Troxel v. Granville (2000), 120 S.Ct. 2054 that parental rights to raise their children are paramount to all other asserted rights in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in `a criminal action to deny a defendant liberty or life' and, as such, should be entitled to the same heightened protections consistent with the United States and the Ohio Constitutions.
 {¶ 17} "XIII. Trial Court erred in admitting hearsay testimony of FCCS's key material witness in violation of Ohio Statutory law, Ohio R. Evid. 801, and further in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in `a criminal action to deny a defendant liberty or life' and, as such, should be entitled to the same heightened protections consistent with the United States and the Ohio Constitutions.
 {¶ 18} "XIV. Trial Court erred in denying Appellant's Motion to Admit Appellant's Exhibits Nos. 1-3 that were relevant and material pursuant to Ohio R. Evid. 401 in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in `a criminal action to deny a defendant liberty or life' and, as such, should be entitled to the same heightened protections consistent with the United States and the Ohio Constitutions.
 {¶ 19} "XV. Trial Court erred in terminating Appellant's parental rights in regard to Appellant's children in violation of this Honorable Court's mandate set forth in In the Matter of Gibson, McGraw (July 19, 1979), Nos. 78 AP-856, 857, unreported (1979 Opinions 2005) and further in violation of Appellant's fundamental rights pursuant to the First andNinth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty, and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws.
 {¶ 20} "XVI. The decision of the Trial Court is against the manifest weight of evidence in accordance with the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions in light of Troxel v. Granville (2000), 120 S.Ct. 2054 and further in light of In re: Vanecisha McLemore (March 20, 2001), Franklin Appellate No. 00AP-974, unreported.
 {¶ 21} "XVII. The decision of the Trial Court is not supported by sufficient probative evidence in accordance with the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions in light of Troxel v. Granville (2000),120 S.Ct. 2054 and further in light of In re: Vanecisha McLemore (March 20, 2001), Franklin Appellate No. 00AP-974, unreported."
 {¶ 22} As a preliminary matter, we note that all of appellant's assignments of error allege a deprivation of her constitutional rights. Appellant explicitly alleges various statues, rules and legal standards utilized in the adjudication of this case were unconstitutional, both on their face and as applied by the trial court, because they served to deprive her of her fundamental right to care for and have custody of her own children, as recognized in Troxel v. Granville (2000), 530 U.S. 57,120 S.Ct. 2054. We do not find Ohio's statutory scheme for determining issues of permanent custody unconstitutional. This court specifically rejected similar arguments in Thompson I, wherein it was stated:
 {¶ 23} "* * * Ohio has accordingly incorporated appropriate due process requirements in the statutes and rules governing juvenile adjudications and dispositions, which are reflected in the extensive and rather intricate statutory framework expressed in R.C. 2151.413 and2151.414. The statutes appropriately reflect the need to balance the extraordinarily significant rights and interests: parents' rights and interest in the custody, care, nurturing, and rearing of their own children, and the state's parens patriae interest in providing for the security and welfare of children under its jurisdiction, in those unfortunate instances where thorough and impartial proceedings have determined that the parents are no longer in the best position to do so.
 {¶ 24} "We do not find that the balance struck by the legislature in achieving this reconciliation between occasionally incompatible goals has been shown to be constitutionally offensive. * * *"
 {¶ 25} Accordingly, appellant's assignments of error will be addressed from the standpoint that the contested statutes and rules are facially constitutional, with appellant's constitutionality arguments being interpreted as asserting that the relevant laws were erroneously applied to deprive her of her constitutional rights under these particular facts.
 {¶ 26} We initially find that assignments of error four through twelve raise arguments which were specifically addressed and rejected by this court in Thompson I, and are therefore res judicata. Thus, assignments of error four, five, six, seven, eight, nine, ten, eleven and twelve are overruled.
 {¶ 27} Appellant's first assignment of error charges that the trial court should have dismissed FCCS's motions for permanent custody on the basis that the motions were not timely adjudicated. In support, appellant directs us to R.C. 2151.414(A)(2), which provides, in part:
 {¶ 28} "The court shall hold the hearing scheduled pursuant to division (A)(1) of this section not later than one hundred twenty days after the agency files the motion for permanent custody, except that, for good cause shown, the court may continue the hearing for a reasonable period of time beyond the one-hundred-twenty-day deadline. The court shall issue an order that grants, denies, or otherwise disposes of the motion for permanent custody, and journalize the order, not later than two hundred days after the agency files the motion.
 {¶ 29} "* * *
 {¶ 30} "The failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court."
 {¶ 31} Although the statute purports to require a court to adjudicate a motion for permanent custody within 200 days of its filing, the statute provides no penalty for any failure to do so, and, in fact, explicitly declares that the failure to timely adjudicate a motion for permanent custody cannot be a basis for attacking the validity of a court order. We are in accord with other appellate districts in finding that "the failure to meet the named time periods does not provide a basis for attacking the validity of the judgment." In re Mariah R. (Dec. 14, 2001), Lucas App. No. L-01-1370, citing In re Goodwin (Aug. 17, 1998), Licking App. No. 98-CA-03, and In re Hare (Mar. 2, 1998), Scioto App. No. 97CA2532. Moreover, the motions for permanent custody were refiled upon remand on May 23, 2001, with a trial being held November 14 through 16, 2001, and a final order journalized on December 3, 2001. Counting all the days from May 23, 2001 to December 3, 2001, the total is 194, which is less than 200 days. We, therefore, overrule appellant's first assignment of error.
 {¶ 32} Appellant's second assignment of error alleges that the motions for permanent custody were not properly served so that the court was deprived of jurisdiction. Appellant was present at trial, and was represented by counsel, who filed motions prior to trial and signed continuance forms for a change in trial dates. Her complete participation in the procedure waives any possible inadequacy of the notice. See In re Shaeffer Children (1993), 85 Ohio App.3d 683, 688. Thus, appellant's second assignment of error is overruled.
 {¶ 33} Appellant's third assignment of error charges that the trial court erred in denying her motion to exclude a witness. Specifically, appellant claims that the trial court erroneously allowed FCCS caseworker Tamera White to be present in the courtroom while other witnesses were asked to remain outside. Although White was a witness, she was also a representative of FCCS, a party to the action and, thus, was permitted to be present under Evid.R. 615(B), which provides:
 {¶ 34} "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of any of the following:
 {¶ 35} "* * *
 {¶ 36} "(B) an officer or employee of a party which is not a natural person designated as its representative by its attorney[.]"
 {¶ 37} According to appellant, by allowing the FCCS caseworker to be present while other witnesses were excluded, Evid.R. 615 created "discriminant classifications with disproportionate treatment that do not meet the stringent requirements of the Strict Scrutiny test in violation of the United States and Ohio Constitutions." (Appellant's brief at 15, emphasis sic.) Appellant has failed to demonstrate how she was prejudiced by White's presence in the courtroom, how the presence of an FCCS representative in general results in discriminatory treatment of a parent in a permanent custody proceeding, or how Evid.R. 615 on its face is unconstitutional. Thus, we overrule her third assignment of error.
 {¶ 38} Appellant's thirteenth assignment of error alleges the trial court erred in admitting hearsay evidence. Appellant alleges that at several points during the trial FCCS witness White testified to matters which were not within her personal knowledge, which was in violation of Evid.R. 802. In support, appellant cites In re McLemore (Mar. 20, 2001), Franklin App. No. 00AP-974, in which this court reversed and remanded an order terminating parental rights on the grounds that the appellant had been given ineffective assistance of counsel during trial. In McLemore, counsel had failed to object to testimony by an FCCS caseworker regarding the results of drug tests and other facts about which the caseworker did not appear to have personal knowledge. This court held that because there was evidence that appellant had made progress on some of the goals of her case plan, there was a "reasonable probability that counsel's failure to object to certain testimony regarding appellant's drug usage may have impacted the results of the proceeding."
 {¶ 39} By contrast, White's testimony in the case at bar was limited to topics upon which she did have personal knowledge. As the magistrate explained it:
 {¶ 40} "* * * This caseworker has not testified as to the results even of the psychological evaluation or of other people's work. She has only testified as to what she seen [sic] at visits and her confirmation of the nuts and bolts as to whether appointments were kept, that referrals were made and that there has been no documentation or evidence made of any completion. So these are clerical things that she's testifying to and things that she's seen first hand.
 {¶ 41} "* * *
 {¶ 42} "I find that none of that is hearsay, that it is a part of the records keeping that is required by a Children Services' [sic] caseworker in order to see if there's compliance with the case plan. So she's not ___ she's not trying to testify here as to what a third person has evaluated, it's her own evaluation." (Tr. 15-16.)
 {¶ 43} Concluding that the statements objected to were not hearsay, we find that the trial court did not err in overruling appellant's objections. Appellant's thirteenth assignment of error is overruled.
 {¶ 44} Appellant's fourteenth assignment of error asserts the trial court erred in denying her motion to admit exhibit Nos. I through III. This assignment focuses upon testimony by Scott Campbell, who is a case manager for a foster care agency. Appellant's purpose in calling this witness, whose testimony ostensibly was against appellant's interests, appears to have been to point out that in three quarterly progress reports (one for each child) prepared by Campbell, the statement was made that "FCCS has TOC [temporary custody] at this point but they may consider changing the custody status to PPLA [planned permanent living arrangement]." (Tr. 102.) By these documents, appellant's counsel presumably sought to show that FCCS ignored Campbell's recommendation that appellant's parental rights not be terminated, but rather that the children be subject to a planned permanent living arrangement. Or perhaps counsel meant to show that FCCS intended a PPLA all along and the PCC motion was a mistake.
 {¶ 45} Either way, the trial court did not err in excluding the exhibits. First, the reports are a record of Campbell's impressions as an observer of the children's welfare and of their interaction with their foster family, and are not a reliable source of information regarding FCCS's position. In addition, Campbell testified that when he wrote these reports he was new to the job and mistakenly wrote "TOC" when he meant to write "TCC" and that he mistakenly wrote "PPLA" when he meant to write "PCC." Therefore, it was never Campbell's recommendation that the children be placed in a planned permanent living arrangement. Finally, the sentence in question was merely a statement of Campbell's understanding of FCCS's position, rather then any sort of specific recommendation by him. Campbell is not an employee of FCCS and does not speak for the agency. Based upon all these considerations, and based upon the court's stated conclusion that the statement in the reports was incorrect and confusing, the court properly refused to admit exhibit Nos. I through III. Appellant's fourteenth assignment of error is overruled.
 {¶ 46} Appellant's fifteenth assignment of error asserts that the trial court's decision terminating parental rights was in violation of the United States and Ohio Constitutions. In particular, appellant urges us to follow In re Gibson (July 19, 1979), Franklin App. No. 78AP-856, in which this court stated "where there is a true parent-child relationship and true love exchanged between the parent and child, permanent commitment is out of the question, even though the mother is unable to provide a proper home for her children." According to appellant, because the evidence presented at trial supported a finding of such a relationship between appellant and her children, the court should not have ruled in favor of FCCS.
 {¶ 47} This assignment of error is related to appellant's sixteenth and seventeenth assignments of error, which raise issue with the manifest weight and sufficiency of the evidence upon which the trial court's decision was based. Therefore, we will address all three assignments together.
 {¶ 48} The right to conceive and raise one's own child is an essential basic civil right, but it is not an absolute right. In re Siders (Oct. 29, 1996), Franklin App. No. 96APF04-413, citing In re Cunningham (1979), 59 Ohio St.2d 100, 104-105. Permanent custody judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. In re Brofford (1992), 83 Ohio App.3d 869, 876-877. Further, the findings of a trial court are presumed correct since, as the trier of fact, it is in the best position to weigh the evidence and evaluate the testimony. Id. at 876; In re Brown (1994), 98 Ohio App.3d 337, 342.
 {¶ 49} Pursuant to R.C. 2151.414(B)(1)(d), when a child has been in the custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, a trial court need not engage in an analysis of whether the child can or should be placed with either parent within a reasonable time. See, e.g., In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205. Instead, the only consideration in such a case is the best interests of the child, which is determined by consideration of the factors set forth in R.C. 2151.414(D) in light of the facts of the particular case. Id.
 {¶ 50} Thus, the trial court is charged with considering the interaction and interrelationship of the child with parents, siblings, relatives, foster parents, and others who may significantly affect the child, the wishes of the child, the custodial history of the child, including whether the child has been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period, the child's need for a legally secure placement and whether that placement can be achieved without a grant of permanent custody to FCCS, and whether any factors listed in divisions (E)(7) to (12) of R.C. 2151.414 apply in relation to the parents and child. R.C. 2151.414(D); Williams, supra. R.C.2151.414(E)(7) to (12) lists the additional factors of whether the parent has been convicted of a crime, withheld medical treatment or food from the child, placed the child at risk of harm due to alcohol or drug abuse, abandoned the child, had parental rights terminated with respect to a sibling of the child, or is incarcerated at the time of the filing of the motion for permanent custody.
 {¶ 51} The evidence presented at trial primarily consisted of testimony by appellant and by FCCS caseworker White. Appellant testified that the last time Aaron and Annie had lived with her was in September 1998. She stated that she had left them at home with their father, Ted Thompson, and that during that time, Thompson and his brother had a fight and police were called.[1] Upon Thompson's arrest on domestic violence charges, the children were placed in the temporary custody of FCCS. FCCS then formulated a case plan requiring appellant to attend parenting classes, receive domestic violence counseling and obtain stable, suitable housing. In addition, the case plan required appellant to take her medication and keep her doctor appointments in an effort to address her diagnosed schizophrenia. Appellant stated that her daughter Maria had been taken from the hospital directly into FCCS custody upon her birth in 1996.
 {¶ 52} Appellant testified to the various problems she had encountered in attempting to fulfill the requirements of the case plan. Appellant stated that she had not had visitation with her children since July 2000, over one year before. She indicated that part of this time she had been a patient in a Michigan psychiatric hospital and that she had also spent time in a psychiatric ward of a Columbus hospital. She said that she was pregnant again and so could not continue to take the medication prescribed for her mental condition. She said that she was unable to afford appropriate housing and was at that time living with friends or cousins of the man whose child she was carrying, but that she and that man were no longer in contact because he had choked her and had gone to jail on a domestic violence charge. She stated that she was waiting for Social Security benefits for her mental disability before she would be able to obtain a more permanent housing arrangement, and that at the time of the trial she was out of work.
 {¶ 53} Regarding her failure to complete domestic violence and parenting classes, appellant testified that she lacked money to attend a domestic violence program, and that the parenting classes had not been suitable because they were geared toward the parents of infants. She stated that she had gone so long without visiting the children because she had been under the mistaken impression, given her by relatives, that her visitation rights had been terminated during her hospital stay in Michigan, but that she had not directly contacted FCCS to determine if this was true. She testified that when she did finally contact White, she was told too much time had passed and that there would be a delay while the children were assessed by a counselor to determine the impact such a visit might have. Appellant indicated that she expected to have her mental health issues under control in about six months, and that she would not need public assistance after that time. She said she did not know how long it would be before she would be in a position to have the children come home.
 {¶ 54} FCCS caseworker White testified that the case plan required appellant to obtain domestic violence, parenting, and mental health counseling, engage in regularly scheduled visitation with the children, and obtain stable housing. White stated that domestic violence was an issue because there had been a history of violence in appellant's relationship with Thompson. White indicated that although she provided appellant with a list of domestic violence agencies, and despite the fact that FCCS would have assisted appellant with the cost of obtaining assistance on this component of the case plan, to her knowledge appellant had not engaged in domestic violence counseling.
 {¶ 55} White testified that although appellant completed the mental health assessment required by the case plan, the recommendation which came out of that assessment — that appellant participate in parenting classes — was not followed by appellant. White testified that the parenting classes covered a wide variety of ages of children, and that there was an additional class geared towards parents of children with attention deficit problems, with which Aaron had been diagnosed. White stated that appellant attended only a few of the classes, and failed to complete any of the programs recommended to her. White said that appellant had failed to consistently apply parenting skills during her visitations with the children, and that the times she did do so were generally when she appeared to be on medication. White indicated that there were times when appellant tolerated the children's attention, and other times in which appellant would push them away. She testified that during a visitation, appellant had to be reminded to change a diaper, and seemed unable to cope with that task.
 {¶ 56} White testified that her assessment of appellant's ability to comply with the mental health component of her case plan was that appellant had not consistently met the requirements of the plan. She further testified that appellant had not met the housing requirements of the plan, because she had moved frequently, and had not been able to retain the apartment she did have, from which she had been evicted, nor had she followed through in investigating other possible housing sources. Finally, White testified that appellant had not attended visitation on a regular basis, and, in fact, had only visited 41 percent of the total amount of time that she could visit. In addition, she said when appellant actually did visit, she was late 25 percent of the time. Testifying regarding the childrens' interrelationships and bonding, White stated that, during visitation, the children at first were happy to see appellant but that this changed over time and that, on at least one occasion, the mother would push the children away or overreact to a simple situation, and that this appeared to have a negative effect upon the children. White stated that it was her assessment that the children were not bonded with their mother or their father, but that they had bonded successfully with their foster parents.
 {¶ 57} Appellant responded that her children always seemed happy to see her during visitation, and that she had only pushed them away because during her pregnancy, it had become uncomfortable to have them hug her too vigorously. She stated that her visitations were missed due to her hospitalizations for both her mental problems and for a case of pneumonia.
 {¶ 58} In concluding there was clear and convincing evidence supporting the grant of permanent custody to FCCS, the magistrate's decision stated, in part:
 {¶ 59} "* * * [T]he children cannot be placed with either parent within a reasonable time or should not be placed with either parent because: (1) following the placement of the children outside then [sic] home, notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy those conditions such as the psychiatric, psychological, and other social and rehabilitative services and resources that were made available by compliance with the case plan for the purpose of changing parental conduct to allow them to resume and maintain parental duties; (2) the chronic mental illness of the mother that is so severe in its recurrence requiring hospitalization that it makes the mother unable to provide an adequate permanent home for the children now or within a year; and (3) the parents have demonstrated a lack of commitment toward the children by failing to regularly support, visit or communicate with the children when able to do so.
 {¶ 60} "Relatives were investigated and were either unwilling or unable to assume custody. Aaron is now 7 years old, Annie is 5, and Maria is 2. On March 8, 2000, the three children were placed in a foster home where their therapist sees them three times a month to address any behavior problems and to oversee their placement, clothes, schooling, and counseling. The three children are strongly bonded with each other and they consider the foster family with whom they are bonded as their family who could adopt them. When Sylvia and Ted exercised visits, the children at the very beginning of the case would approach them, but affection was not returned by Sylvia and Ted and the parents would usually request to leave early, so for the majority of the later visits, the children played among themselves and paid no attention to the parents. Sylvia explained that when she was pregnant with Maria that she could not hold them and told them not to be rough on her, then later she was busy with the baby while the other two ate food the foster family provided. The mother said that the reason for her visits was to let them know she is their mother, she did not inquire about their feelings and what they like. The children are not bonded with either parent and although Sylvia says she loves them, there has been no evidence of a parent-child true love relationship. The foster family with whom they are bonded would be able to adopt them."
 {¶ 61} Our review of the transcript of trial, the magistrate's decision, and the trial court decision overruling appellant's objections to the magistrate's decisions, indicates that there was sufficient clear and convincing evidence before the court supporting its decision to grant permanent custody to FCCS. The evidence showed that the children had been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period. The evidence also supported a finding that appellant had not visited with the children for an extended period of time prior to the trial, and that even during a previous period when appellant had visited with the children, her attendance was sporadic, thus demonstrating a lack of commitment toward the children as defined in R.C. 2151.414(E)(4). The evidence clearly supported a finding that appellant had been unwilling or unable to substantially comply with any of the components of the case plan. The evidence also supported a finding that, due in part to her chronic mental illness, appellant was at the time of the hearing and for an extended, unknown time into the future, unable to provide appropriate housing or care for the children, and that the children were in need of a legally secure placement which could not be achieved without a grant of permanent custody.
 {¶ 62} Thus, the trial court properly determined that the best interests of the children would be served by awarding FCCS permanent custody. Appellant's fifteenth assignment of error is overruled on the basis that, even if the standard enunciated in In re Gibson were still the sole consideration in permanent custody cases (which it is not), the facts in this case do not support a finding that there is a true parent-child relationship and true love exchanged between appellant and her children. Appellant's sixteenth and seventeenth assignments of error are overruled on the grounds that the manifest weight and sufficiency of the evidence support the decision of the trial court terminating parental rights and granting permanent custody to FCCS.
 {¶ 63} For the foregoing reasons, appellant's seventeen assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, are affirmed.
Judgments affirmed.
TYACK and BROWN, JJ., concur.
[1] According to the record, Ted Thompson is not contesting the permanent commitment of the children to FCCS for the purposes of adoption.